# CHARLESTON

McDONALD, COMMITTEE *v*. JARVIS.

Submitted March 3, 1908.    Decided March 10, 1908.

1. TRUSTS—*Construction—Jurisdiction in Equity.*

When the meaning of a will, deed, contract or other instrument, relating to the subject matter of a trust, is doubtful, and, by reason of such doubt, the trustee is embarrassed or exposed to danger in the execution of his trust, and the law affords him no remedy by which his rights, powers and liabilities may be defined, and his duty indicated, a court of equity will construe the instrument and declare its legal force and effect by way of advice and instruction. (p. 64.)

2. INSANE PERSONS—*Duties of Committee—Instruction by Court.*

The committee of a lunatic acts in a fiduciary capacity and may, in a proper case, have such relief.    (p. 65.)

3. DEED—*Construction—Interest Conveyed.*

A deed conveying land and personal property to the grantees without words of limitation or definition of their estates, but reserving to the grantors estates therein for their lives, in the following terms as to the land, "shall enjoy the free use, benefit and possession of the said land  *  *  *  during his or her natural life for residence or other purposes, free from the will or wish" of the grantees, and, as to the personal property, "shall enjoy the free use, benefit and possession during his or her natural life  *  *  *  for their use free from the will or wish" of the grantees, reserves estates for life in the grantors and vests remainders in fee in the grantees.    (pp. 65, 66.)

4.  EQUITY—*Possession of Property—Remedy at Law—Life Estates—Recovery of Possession.*

    The law affords the life tenant under such a deed appropriate, ready and complete remedies for the recovery of the possession of the property, and courts of equity will not entertain them for such purpose.  (p. 64.)

Appeal from Circuit Court, Kanawha County.

Bill by John S. McDonald, committee of Sarah J. Jarvis, against Emma Jarvis.  Decree for plaintiff, and defendant appeals.

*Reversed.    Bill Dismissed.*

EVERETT E. & M. M. ROBERTSON and LITTLEPAGE, CATO & BLEDSOE, for appellant.

J. H. HUNT and J. W. KENNEDY, for appellee.

POFFENBARGER, JUDGE:

John S. McDonald, Committee for Sarah J. Jarvis, an insane person, obtained from the circuit court of Kanawha county, an injunction, restraining Emma Jarvis from selling or disposing of certain personal property or interfering with the same or the growing corn on a certain parcel of land; and, later, a final decree for the possession of the tract of land and said personal property, and an adjudication of his right to sell and dispose of the latter, from which decree said Emma Jarvis has appealed.

The bill discloses that Caleb J. Jarvis, owning a small tract of land, conveyed it to his son, Wm. A. Jarvis and Emma Jarvis, wife of Wm. A., his daughter-in-law, reserving life estates therein for himself and his wife, Sarah J. Jarvis, by providing that they or the survivor of them, in case of death, should "enjoy the free use, benefit and possession of the said land * * * * during his or her natural life for residence or other purposes, free from the will and wish of the said William A. Jarvis and Emma Jarvis his wife."  By the same deed, he granted to the same parties all of his personal property, making a similar reservation in respect to the same.  Afterward he died and his wife, Sarah J. Jarvis became insane, and to some extent indebted, and J. S. McDonald, the plaintiff, was appointed committee for her.  At the date of the institution of this suit, William A. Jarvis was

dead, and Emma Jarvis was in possession of both the land and the personal property, denying the right of the committee or his ward thereto, and was about to sell and dispose of part of the personal property. The necessity of a sale of part of the property for payment of the ward's indebtedness and her maintenance and support was alleged. The appointment of a receiver to take charge of the property and the sale of enough of the personal property and growing crops to pay the indebtedness and provide suitable support and maintenance for the ward were asked for in the prayer of the bill. Before the rendition of the decree, the prayer, but not the charging part of the bill, was amended, but not in any material respect. A demurrer interposed was overruled, and the defendant answered, claiming the absolute title to the property, subject to a charge thereon of support and maintenance in favor of the grantors, but upon condition that they remain upon the land of the grantees.

The principal object of the bill seems to have been the acquisition of possession of the property, both real and personal. It may be that the pleader had in mind the jurisdiction in equity to give direction to trustees in cases of doubt as to the construction of wills, deeds and other instruments producing embarrassment in the execution of their trust; but he did not invoke that jurisdiction in terms either in the bill or his brief. If this case does not come under this general head of equity jurisdiction, no basis for the entertainment thereof is perceived. For the recovery of possession of the land, the legal remedy, ejectment or unlawful detainer, was both appropriate and adequate, and, as to the personal property, an action of detinue would have given ready and complete relief. If the personal property could be sold and the proceeds applied to the payment of the ward's debts and her maintenance and support, there was no occasion for any application to the court for permission to sell the same and so apply the proceeds, for the statute, section 37 of chapter 58 of the Code, section 2672 of the Code of 1906, confers such power upon the committee in express terms.

The jurisdiction in equity to entertain, on behalf of executors and administrators, bills for advice and direction, or bills of conformity as they are sometimes called, is firmly established. *Rexroad* v. *Wells*, 13 W. Va. 812; *Hanna* v.

*Galford*, 55 W. Va. 160; *Young* v. *Cabell*, 27 Grat. 761; *Osborne* v. *Taylor*, 12 Grat. 117. Equity extends the same protection to trustees. *McCrum* v. *Lee*, 38 W. Va. 583. That the committee of a lunatic acts in a fiduciary capacity admits of no doubt, and the reasons for entertaining other classes of fiduciaries in cases of embarrassment, arising from doubt and uncertainty as to the construction of wills, deeds and contracts, seem to apply with equal cogency to committees. Though we have no decision asserting such jurisdiction in respect to committees, it has been declared by other courts. *Cooper* v. *Wallace*, 55 N. J. Eq. 196; *Shaffer* v. *List*, 114 Pa. St. 486. While the powers conferred upon committees by our statutes are very broad, it may be that independently of them, the status of these persons is, in some respects, similar to that of guardians of infants, in the view of a court of equity. This Court seems to assert such doctrine in *Trowbridge* v. *Stone, Admr.*, 42 W. Va. 454. Both reason and authority sustain the exercise of the jurisdiction in question, at the instance of a committee of a lunatic, but a court of equity cannot pronounce a decree in his favor, directing his course and procedure, if the instrument in question, properly construed, does not give the right or warrant the relief sought by the bill. This suit is founded upon an instrument that is perfectly plain in its terms, as well as its legal effect. The deed exhibited conveys the fee simple title of both the real and personal property to the grantees therein, subject to a reserved life estate in the same in favor of the grantors, of whom the lunatic, whose estate is under the control of the plaintiff, is one. All of its provisions must be considered. It conveys the land and personal property to Wm. A. and Emma Jarvis. This is a manifestation of plain intention that they take some estate in it on the delivery thereof. The reservation clause secures to the grantors, for and during their natural lives, the free use, benefit and possession of the land for residence or other purposes, free from the will and wish of the grantees, and the free use, benefit and possession of the personal property, free from the will and wish of the grantees. These terms are broad and somewhat indefinite, but we cannot say they signify intention to reserve a power of sale or disposition of the property. That would be repugnant to the intention disclosed by the deed,

considered as a whole.  A life estate coupled with unlimited power of disposition is equivalent to a fee simple title. *Morgan* v. *Morgan*, 60 W. Va. 327; *Milhollen* v. *Rice*, 13 W. Va. 510; *Burwell's Admr.* v. *Anderson*, 3 Leigh 348. If these life tenants had such power of alienation of the subject matter, the grantees took nothing and the execution of the deed was an idle and vain transaction.  Such a result is forbidden by the rules of construction.  A deed must be so interpreted as to make it operative and effective, if the terms used are susceptible of such an interpretation. *Higgins* v. *Round Bottom Coal Co.*, 59 S. E. 1064.  In order to make this deed work a grant *in praesenti*, according to its terms, it is, therefore, necessary to say it segregated the title into a life estate and an estate in remainder, reserving the former to the grantors and vesting the latter in the grantees.  To say there was a mere reservation of the right of mainte-nance and support would do violence to the terms of the deed, expressly securing to the grantors the use and possession of the property free from the wishes of the grantees.  Principles settled and declared in *Bartlett* v. *Patton*, 33 W. Va. 71, and *Dunbar's Exrs.* v. *Woodcock's Exrs.*, 10 Leigh 628, determine the right and liabilities of the life tenant, respecting the personal property.  Having only a life estate in it, she is entitled to the possession and use of the same. She cannot rightfully sell and dispose of it and appropriate the proceeds thereof to her own use.  If she may, under any circumstances, convert it into money, she can rightfully use, for her own purposes, such as payment of debts and maintenance and support, no more than the interest on the fund arising therefrom.  She is bound to account ultimately for such of it as is not consumed in the use thereof.  Of course, her estate, at her death, will not be accountable for loss occassioned by the use of the property, and, if some tools and implements on the farm should be completely worn out, or the stock should die of old age, her estate would be under no duty to make good such losses; but she has no right to turn it into cash and convert it to her own use.  As to the real estate, she is, of course, entitled to the rents, issues and profits, all she can make out of it during the period of her estate therein.  The circumstances disclosed by the bill indicate improvidence and lack of foresight in the execution

of this deed. Contrary to the expectations of the grantors, the husband soon died and the wife became a helpless lunatic, unable to contribute to her own support, for which reason it would now appear to have been better if the deed had never been made; but this has no bearing upon the construction of the instrument. Its legal effect must be ascertained from its terms, which are plain and unambiguous, and, if they were not, and extraneous evidence were admissible, only the facts and circumstances existing at the date of the execution thereof could be considered. The hardship and distress, occasioned by subsequent events, have no bearing upon the question.

Our conclusion is that the court erred in overruling the demurrer. The decree complained of will be reversed, the demurrer sustained, the injunction dissolved and the bill dismissed.

*Reversed. Bill Dismissed.*